UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEPHEN THOMAS YELVERTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 13-314 (RWR) |
| | ) |
| HAMILTON P. FOX, III, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION

Plaintiff Stephen Yelverton has filed an amended four-count complaint against Hamilton Fox, III, in his capacity as the assistant bar counsel of the Office of Bar Counsel of the District of Columbia Court of Appeals ("OBC"), seeking, among other things, an injunction that would halt an ongoing disciplinary proceeding before the District of Columbia Court of Appeals' Board of Professional Responsibility ("BPR") that could result in a temporary suspension of Yelverton's ability to practice law in the District of Columbia. The defendant has moved to dismiss or for summary judgment, arguing that, among other things, this Court should exercise equitable restraint by dismissing this case to avoid interfering with an ongoing District of Columbia court proceeding. Yelverton opposes, and has moved for a preliminary injunction. Because Fox has shown that this Court should exercise equitable restraint by dismissing Yelverton's complaint, his motion to dismiss will be granted, and

-2-

Yelverton's motion for a preliminary injunction will be denied as moot.

## BACKGROUND

Yelverton has been licensed to practice law in the District of Columbia since April 1979.  First Am. Compl. ¶ 1.  Yelverton represented a complaining witness in a criminal case brought in D.C. Superior Court that resulted in an acquittal.  Id. ¶¶ 21-22. Yelverton unsuccessfully moved for a mistrial, and in March 2010, Yelverton filed a notice of appeal of the trial court's order denying his motion for a mistrial with the D.C. Court of Appeals. That appeal was denied.  See Snow v. Carrick, Nos. 10-CO-384, 10-CO-453, slip op. at 2 (D.C. June 7, 2010).  The D.C. Court of Appeals referred Yelverton to the OBC for disciplinary proceedings, stating:

> The conduct of counsel for both appellant . . . and
> cross-appellant . . . raise serious concerns as to the
> propriety of the actions taken and the judgment
> exercised by both and the matter is hereby referred to
> Bar Counsel for investigation in that regard.

Snow, Nos. 10-CO-384, 10-CO-453, slip op. at 1.[1]

---

[1] A helpful synopsis of the District of Columbia Court of Appeals' disciplinary process was set forth in Ford v. Tait, 163 F. Supp. 2d 57 (D.D.C. 2001):

> The Office of the Bar Counsel is responsible for
> processing complaints of attorney misconduct.  After
> the Bar Counsel investigates allegations of misconduct,
> it initiates formal disciplinary proceedings and
> prosecutes the case before a three-member Hearing
> Committee appointed by the Board and in the presence of
> the attorney charged with misconduct, i.e., the

-3-

In October 2011, Fox, as an assistant Bar Counsel, filed
with the OBC a Specification of Charges alleging that Yelverton
violated Rules of Professional Responsibility 1.1(a) (failing to
provide competent representation to a client), 1.1(b) (failing to
serve a client with the skill and care commensurate with that
generally afforded clients by other lawyers in similar matters),
3.1 (filing frivolous motions), and 8.4(d) (engaging in conduct
that seriously interfered with the administration of justice).
First Am. Compl. ¶ 4; Def.'s Mem. of P. & A. in Supp. of Mot. to
Dismiss ("Def.'s Mem.") Ex. 1 ("Specification of Charges").[2]

---

      respondent.  The respondent may choose to retain
      counsel.  The Hearing Committee then submits findings,
      with the record of the proceedings, to the Board of
      Professional Responsibility.  The Board has the option
      to schedule oral arguments and can affirm, modify,
      remand, or dismiss the charges.  The Board then submits
      its recommendation and the full record to the D.C.
      Court of Appeals.  Upon request, the Court of Appeals
      may also hear oral argument.  Lastly, the Court of
      Appeals issues a final order.  The D.C. Court of
      Appeals will adopt the Board's recommendation, unless
      it rules that the recommendation is unwarranted or
      unsupported by "substantial evidence."

Ford, 163 F. Supp. 2d at 59 (internal citations omitted).

    [2] Yelverton attempted to remove the disciplinary proceedings
to the United States District Court for the District of Columbia,
arguing in his notice of removal that, among other things,
removal was proper because the Specification of Charges
implicated his First Amendment right to access the courts, and
because Fox acted in bad faith and harassed Yelverton.  See In Re
Yelverton, 11-mc-669 (UNA), Docket Entry #1, Notice of Removal,
¶¶ 2-4, 6-9 (D.D.C. November 8, 2011).  However, his attempted
removal action was dismissed for lack of subject matter
jurisdiction and remanded to the BPR.  Id., Docket Entry #3,
Order (D.D.C. December 6, 2011).  Yelverton appealed that

-4-

The Ad Hoc Hearing Committee of the BPR held a hearing on the complaint against Yelverton in February 2012, during which both the OBC and Yelverton were offered an opportunity to present evidence and argument.  First Am. Compl. ¶ 48.  In August 2012, the Ad Hoc Committee issued a Report and Recommendation to the full BPR.  Two of the three members of the board recommended against imposing disciplinary sanctions against Yelverton. Def.'s Mem., Ex. 2 at 23.  The OBC filed objections to the Report and Recommendation.  In July 2013, the BPR issued its final decision which found that Yelverton violated each of the Rules of Professional Conduct listed in the Specification of Charges, and recommending that Yelverton be suspended from the practice of law for 90 days and be allowed reinstatement only after he demonstrates his fitness to continue practicing law.  See Def.'s Notice of Decision and Supplemental Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss, Ex. 1 at 23-24.

On March 11, 2013, Yelverton filed his original complaint in this action.  Yelverton filed the first amended complaint on April 1, 2013, alleging four claims against Fox.[3]  Counts One and

---

decision, the U.S. Court of Appeals for the D.C. Circuit dismissed the appeal for lack of jurisdiction, and the Supreme Court denied certiorari.  See In Re Yelverton, No. 12-7004 (D.C. Cir. Jan. 30, 2012); Yelverton v. D.C. Office of Bar Counsel, 133 S. Ct. 332 (2012).

[3] In addition to the original complaint and the first amended complaint, Yelverton has moved for leave to amend the complaint seven additional times, seeking to add additional

-5-

Three seek a declaratory judgment under 28 U.S.C. § 2201 that the
Specification of Charges is null and void because it had no basis
in fact or law and violated Yelverton's rights under the First,
Fifth, and Fourteenth Amendments to the U.S. Constitution, and
that D.C. Bar Rule XI, Section 19(a) violates the D.C. Bar
members' right to equal protection because the OBC can act with
immunity from violations of the Rules of Professional Conduct
while prosecuting violations of the Rules of Professional
Conduct.  First Am. Compl. ¶ 78.  Counts Two and Four seek
injunctive relief under 28 U.S.C. § 2283 to enjoin the
prosecution in the D.C. Court of Appeals of the Specification of
Charges against Yelverton, and to permanently enjoin the OBC from
giving its members immunity for violations of the Rules of
Professional Conduct while they prosecute alleged violations of
the Rules of Professional Responsibility.  Id.  Fox has moved
under Rule 12(b)(1) to dismiss the first amended complaint for
lack of subject matter jurisdiction, arguing that this Court

---

theories under which the District of Columbia Court of Appeals'
disciplinary proceedings are improper, and to certify a class
action.  Leave to amend may be denied if the proposed amendments
are "futil[e]."  Foman v. Davis, 371 U.S. 178, 182 (1962).  "An
amended complaint is futile if it merely restates the same facts
as the original complaint in different terms, reasserts a claim
on which the court previously ruled, fails to state a legal
theory or could not withstand a motion to dismiss."  Pietsch v.
McKissack, 677 F. Supp. 2d 325, 328 (D.D.C. 2010).  Because none
of Yelverton's proposed amendments affects the analysis of
whether to exercise equitable restraint, the motions for leave to
amend will be denied as futile.

-6-

should exercise equitable restraint to avoid interfering with an ongoing District of Columbia court proceeding.[4]  Yelverton opposes.[5]

DISCUSSION

Under Rule 12(b)(1), a defendant may move to dismiss a complaint for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "'Before a court may address the merits of a complaint, it must assure that it has jurisdiction to entertain the claims.'"  Ferguson v. Long, 885 F. Supp. 2d 294, 297 (D.D.C. 2012) (quoting Sierra Club v. U.S. Environmental Protection Agency, 850 F. Supp. 2d 300, 302 (D.D.C. 2012) (internal

---

[4] In light of the finding that principles of equitable restraint justify dismissing this case, this opinion does not address Fox's alternative arguments that the case should be dismissed for lack of subject matter jurisdiction based on res judicata, or that the complaint should be dismissed for failure to state a claim for which relief can be granted.

[5] Yelverton has moved for a preliminary injunction staying the effect of the BPR's decision until the conclusion of this action.  Pl.'s Mot. for P. I. at 2.  A plaintiff seeking a preliminary injunction "carries the burden of persuasion by a clear showing 1) of a substantial likelihood of success on the merits, 2) of irreparable injury if the injunction is not issued, 3) that the injunction would not substantially injure other interested parties, and 4) that the injunction is in the public interest."  Diwan v. EMP Global, 841 F. Supp. 2d 246, 249 (D.D.C. 2012) (citing Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004)).  Because Fox's motion to dismiss will be granted, Yelverton's motion for a preliminary injunction will be denied as moot.  However, if Yelverton's motion for a preliminary injunction had been addressed on the merits, it would have been denied, because Yelverton has neither shown that he has a substantial likelihood of succeeding on the merits, nor shown that a temporary suspension of his license to practice law would constitute an irreparable injury.

-7-

quotation omitted)).  However, because Fox requests, under the

doctrine first elucidated in Younger v. Harris, 401 U.S. 37

(1971), an equitable restraint of jurisdiction to defer to

ongoing state court proceedings, the question of whether an

equitable restraint is warranted will be addressed first.[6]   See

Tenet v. Doe, 544 U.S. 1, 6 n.4 (2005).

A federal court applies a three-part test to determine

whether it should dismiss a case based on the Younger doctrine.

First, the court determines whether the ongoing state proceedings

are judicial in nature; second, the court determines whether the

state proceedings implicate important state interests; and third,

the court looks at whether the proceedings afford adequate

opportunity in which to raise the federal claims.  Ford v. Tait,

163 F. Supp. 2d 57, 62 (D.D.C. 2001) (citing Hoai v. Sun Ref.

& Mtkg. Co., 866 F.2d 1515, 1517 (D.C. Cir. 1989).  The federal

court must also consider whether the party opposing abstention

has made a sufficient showing of bad faith, harassment, or

exceptional circumstances that would warrant federal

jurisdiction.  Ford, 163 F. Supp. 2d at 62 (D.D.C. 2001) (further

stating that an "example of an exceptional circumstance is a

---

[6]   While the opinion in Younger mentions state court
proceedings only, the Younger doctrine applies to judicial
proceedings in the District of Columbia as well.  JMM Corp. v.
District of Columbia, 378 F.3d 1117, 1120-25 (D.C. Cir. 2004).

-8-

statute that 'flagrantly and patently' violates a constitutional provision").

Ford held that the District of Columbia Court of Appeals' disciplinary proceedings are judicial in nature, that they implicate important District of Columbia interests, and that they provide respondents with an adequate opportunity to raise constitutional claims.  Ford, 163 F. Supp. 2d at 64-66. Yelverton argues that the Younger equitable restraint doctrine is not applicable here because the Ad Hoc Hearing Committee denied his constitutional claims, Pl.'s Opp'n at 33-34, and because the complaint alleges that Fox and the OBC created extraordinary circumstances, acted in bad faith and harassed Yelverton in 2012, by pressuring Yelverton's client to file complaints against Yelverton with the D.C. Bar, Pl.'s Opp'n at 27-28.  However, his lack of success with the constitutional claims he raised before the BPR's Ad Hoc Committee does not mean that the entire disciplinary process lacked the authority to consider constitutional claims.  As Ford stated:

> District of Columbia case law demonstrates that the D.C. Court of Appeals can hear federal claims arising from attorney disciplinary proceedings.  For example, the D.C. Court of Appeals recently considered an attorney's allegation that the Hearing Committee, the Board of Professional Responsibility, and the Bar Counsel violated his due process rights by denying a request for a continuance and conducting a hearing in his absence.  See In re Chris H. Asher, 772 A.2d 1161, 1165 (D.C. 2001).  In another case involving a reciprocal disciplinary proceeding, the D.C. Court of Appeals heard an argument that the disciplining state

-9-

> violated the attorney's right to free speech.  <u>See</u> <u>In re Benjamin</u>, 698 A.2d 434, 441 (D.C. 1997).  Moreover, the defendants note that the plaintiff will have an opportunity to raise these claims before the D.C. Court of Appeals.

<u>Ford</u>, 163 F. Supp. 2d at 66.  In addition, Yelverton does not cite any authority that the conduct he alleges that Fox and the OBC engaged in rises to the level of bad faith, harassment, or extraordinary circumstances that would justify declining to exercise equitable restraint.[7]

### CONCLUSION

Because Fox has shown that equitable restraint should be exercised to avoid interfering with ongoing District of Columbia

---

[7] Yelverton moved to strike Fox's reply brief in support of his motion to dismiss for purportedly exceeding by three pages the Local Civil Rules' 25-page limit.  The Federal Rules of Civil Procedure provide that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Courts possess significant discretion in deciding whether to grant motions to strike.  <u>See</u> <u>Nwachukwu v. Rooney</u>, 362 F. Supp. 2d 183, 189 (D.D.C. 2005).  As such motions are generally disfavored, the movant's burden is heavy.  <u>Ascom Hasler Mailing Systems v. United States Postal Serv.</u>, 815 F. Supp. 2d 148, 162 (D.D.C. 2011).  The file containing Fox's reply was indeed 28 pages. However, the first page was a cover sheet, the second page was a table of contents, and the final page was the Certificate of Service.  Excluding those pages, the memorandum itself is twenty-five pages long and therefore complies with Local Civil Rule 7(e).  The Local Civil Rules' page limitation refers to the memorandum itself, not exhibits.  <u>See</u> <u>Taylor v. Mills</u>, 892 F. Supp. 2d 124, 149 (D.D.C. 2012) (denying motion to strike defendant's reply containing 21-page memorandum and 14-page exhibit).  Therefore, Yelverton's motion to strike will be denied.

-10-

judicial proceedings, his motion to dismiss will be granted.  An
appropriate final order accompanies this memorandum opinion.

SIGNED this 1st day of November, 2013.

_____/s/_____
RICHARD W. ROBERTS
Chief Judge